# In the United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH HERNANDEZ,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:22-cr-20152-KMM
(Hon. K. Michael Moore, United States District Judge)

## GOVERNMENT'S RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

MARKENZY LAPOINTE
United States Attorney
Southern District of Florida

KATHERINE PAYERLE
Assistant Chief
ANDREA SAVDIE
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

NICOLE M. ARGENTIERI
Principal Deputy Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

JEREMY R. SANDERS
Appellate Counsel
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
(202) 304-7843
jeremy.sanders@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS
## AND DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-3, the undersigned hereby certifies that, in addition to the persons and entities identified in the certificate of interested persons and corporate disclosure statement contained in Defendant-Appellant Elizabeth Hernandez's motion, the following have an interest in the outcome of this case:

Argentieri, Nicole M.

Centers for Medicare and Medicaid Services

Miller, Lisa H.

Sanders, Jeremy R.

Savdie, Andrea

In compliance with Fed. R. App. P. 26.1(b), the undersigned hereby certifies that the organizational victim in this case is the Centers for Medicare & Medicaid Services.

/s/ Jeremy R. Sanders
JEREMY R. SANDERS
Appellate Counsel
Criminal Division, Fraud Section
U.S. Department of Justice

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

Defendant-Appellant Elizabeth Hernandez was found guilty by a jury at the conclusion of a seven-day trial of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349; four substantive counts of health care fraud, in violation of 18 U.S.C. § 1347; and three counts of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035. The district court sentenced Hernandez to twenty years of imprisonment. Consistent with applicable law, the district court declined to release Hernandez pending appeal. *See* 18 U.S.C. § 3143(b)(1) (district court "shall order" that a person convicted of a crime and sentenced to imprisonment "be detained" absent specific findings). Hernandez seeks review of that decision in this Court but, rather than develop any argument in her motion as to how her appeal raises a substantial issue as the Bail Reform Act requires, she seeks to incorporate her district court filing by reference. Because this is procedurally improper, this Court should deny her motion. Should this Court consider the merits of the arguments she raised below, it should also deny relief. Hernandez has not rebutted the presumption against release pending appeal because she has not shown that her underlying appeal raises a substantial question of law or fact likely to result in reversal, a new trial, or a substantial reduction of her sentence. *See* 18 U.S.C. § 3143(b)(1)(B). Finally, Hernandez's claim that a remand is required fails because the record is sufficiently developed to enable appellate review.

1

# BACKGROUND

## A.      Statutory Framework

The question of whether to order a convicted defendant's release pending appeal is determined "in accordance with the applicable provisions" of the Bail Reform Act of 1984. Fed. R. App. P. 9(b)-(c). As relevant here, that Act provides that the district court "shall order" the detention of a person who has been convicted and sentenced to a term of imprisonment. 18 U.S.C. § 3143(b)(1). The Act establishes a presumption that detention is valid despite a pending appeal, and "the burden is on the convicted defendant to overcome that presumption." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (per curiam). The statute goes on to specify that a defendant seeking to rebut this presumption must show:

> (A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

> (B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "[T]he burden of establishing these factors is on the convicted defendant." *Giancola*, 754 F.2d at 901.

### B.    Offense Conduct

Hernandez was an Advanced Practice Registered Nurse who was the most prolific prescriber of fraudulent genetic testing in the entire nation between 2018 and 2021. 9/13/23 Trial Tr. at 65; GX 110.[1] The evidence at trial showed that, in exchange for kickbacks and bribes, Hernandez agreed to participate in a massive telemarketing conspiracy designed to bill Medicare for medically unnecessary genetic tests and durable medical equipment ("DME"). *See, e.g.*, 9/18/23 Trial Tr. at 154–157, 162; 9/14/23 Trial Tr. at 189–193, 201–202, 203–204, 260–261. The scheme operated as follows: (i) telemarketers targeted Medicare beneficiaries to pressure them to accept the medically unnecessary items; (ii) the telemarketers, or purported telemedicine companies they worked with, paid Hernandez illegal kickbacks and bribes to electronically sign off on the genetic tests and DME without evaluating the beneficiaries; and (iii) the telemarketers then sold Hernandez's genetic testing and DME orders to fraudulent laboratories and DME companies that billed Medicare for the items. *Id.* Despite not working in oncology or genetics, from her home in Homestead, Florida, Hernandez prescribed more genetic tests for Medicare beneficiaries than any other provider in the United States. GX 110.

---

[1] "DE" refers to the district court docket entry and, where appropriate, is followed by the relevant page number; "Tr." refers to the designated hearing, trial, or sentencing transcript; "GX" refers to the Government exhibit admitted at trial; "Mot." refers to Hernandez's motion for release pending appeal filed with this Court.

For years, Hernandez robo-signed genetic testing and DME orders for thousands of Medicare beneficiaries across the country whom she never talked to, examined, or treated. *See, e.g.*, 9/13/23 Trial Tr. at 169–170, 172, 188–189, 222; GX 201-215, 303, 305, 307, 308, 311–313, 326, 350;. To increase volume, Hernandez also freely handed out her logins, signatures, and passwords to co-conspirators, friends, and family to fill out and sign doctors' orders on her behalf. 9/13/23 Trial Tr. at 181, 222–224; GX 323, 403, 408, 423, 476. Each time Hernandez clicked her signature (or directed someone to click her signature) on one of these orders, she received illegal kickbacks from her co-conspirators, the telemarketers who sold Hernandez's orders to fraudulent laboratories and DME companies. 9/14/23 Trial Tr. at 256–258; 9/18/23 Trial Tr. at 159. Hernandez lied on the doctors' orders she signed, falsely certifying that she was the beneficiaries' "treating physician" and that she had personally evaluated the beneficiaries to determine if the genetic tests or DME were medically necessary. 9/13/23 Trial Tr. at 176–177, 181; 9/15/23 Trial Tr. At 48-49; 60-61; 90. She also lied in the orders about the beneficiaries' symptoms and injuries and falsified call logs to make it appear as if she had spoken to the beneficiaries when she had not. 9/13/23 Trial Tr. at 161–162, 225; GX 301, 305. The laboratories and DME companies used Hernandez's orders to bill Medicare a staggering amount—nearly $200 million—of which Medicare paid over $100 million. GX 108.

On top of that, Hernandez took advantage of the COVID-19 pandemic to improperly bill Medicare for telemedicine consultations she never performed. When

the pandemic began, Medicare instituted telemedicine "waivers" that temporarily relaxed restrictions on telemedicine coverage to ensure that the elderly and disabled could receive care from their homes during quarantine. 9/13/23 Trial Tr. at 78–79. Hernandez abused these waivers and began billing Medicare for purported "telehealth" consultations with the Medicare beneficiaries for whom she was prescribing genetic tests, even though Hernandez never even talked to the beneficiaries. 9/18/23 Trial Tr. at 162; 9/15/23 Trial Tr. at 58, 72–73; GX 329. Often, Hernandez billed for over twenty-four hours of telemedicine in a single day. 9/13/23 Trial Tr. at 83; GX 117. In a period of approximately six months during the pandemic, Hernandez billed Medicare over one million dollars for telemedicine consultations that never happened. GX 115.

## ARGUMENT

This Court should deny Hernandez's motion for release pending appeal. As an initial matter, Hernandez's motion is procedurally improper because she fails to raise any claim with specificity, attempting instead to incorporate by reference her district court filing. Her motion should be denied on this basis alone. Were this Court to consider the merits of her claims, it should also deny relief. Hernandez has failed to meet her burden under the Bail Reform Act to show that her appeal raises a substantial question likely to result in reversal of her convictions, an order for a new trial, or a

reduced sentence.[2]  Nor is a remand necessary for further factfinding; the record is sufficiently developed to permit appellate review.

## A.   Hernandez's Motion Improperly Seeks to Incorporate Her District Court Briefing

This Court has held that it "will not consider any arguments a party attempts to incorporate by reference to filings in the district court." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015); *see also Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1168 n.4 (11th Cir. 2004) ("We now take the opportunity to join the many other Circuits that have rejected the practice of incorporating by reference arguments made to district courts . . . ."). But that is exactly what Hernandez seeks to do in her motion for release pending appeal filed in this Court. Rather than brief the issues she claims amount to substantial questions sufficient to warrant release pending appeal, she merely recites what her district court motion argued, stating that the arguments "will not be repeated here since the motion itself is attached." Mot. at 3; *see also id.* at 5 ("Appellant submits, for the reasons argued in the motion filed below, that she has met the criteria of 18 U.S.C. § [3143].").  Her recitation of the issues she raised below are without citation of authority or any meaningful argument.  This is improper.  As this Court previously explained, a defendant's attempt to incorporate her

---

[2] The Government does not contend that Hernandez poses a flight risk or is a danger to the community.

briefing from the district court amounts to a request to "transfer [her] duty to make arguments to the judges of this panel." *Four Seasons*, 377 F.3d at 1168 n.4.

Because Hernandez has failed to explain why any of the arguments mentioned in passing amounts to a "substantial question," this Court should deny her motion for release pending appeal. "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this Court from] considering the issue on appeal." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

### B. The District Court's Order Is Sufficiently Detailed to Permit Appellate Review

Hernandez argues, Mot. at 4-6, that the district court's order is insufficiently detailed to permit appellate review such that this Court should "remand to the district court to make . . . factual findings in the first instance." In support, Hernandez relies upon this Court's decision in *In re Smith*, 823 F.2d 401 (11th Cir. 1987), where a remand was ordered in a Rule 9(b) proceeding where the district court "stated no reasons why petitioner was denied release pending appeal," as well as two recent unpublished orders of this Court in which remands were ordered to permit the district courts to further explain their reasoning for denying bail pending appeal, *see* Mot. at 5-6 (citing *United*

*States v. Winslow*, No. 23-12230 (11th Cir. Nov. 13, 2023) and *United States v. Kachkar*, No. 19-12685 (11th Cir. Aug. 4, 2020)). The Government submits that a remand is not required because the record is sufficiently developed to permit appellate review of the claims Hernandez presented to the district court.

It is certainly the case that this Court has "long held that courts are required to develop adequate factual records and sufficiently clear findings as to key issues in order to facilitate meaningful appellate review." *See United States v. Kallen-Zury*, 710 F. App'x 365, 369 (11th Cir. 2017) (per curiam) (unpublished) (citing *United States v. Gupta*, 572 F.3d 878, 889 (11th Cir. 2009)). However, it has also recognized that "while explicit fact determinations are preferred, particularly where . . . the record is extensive and the court is much more familiar with the underlying issues, a court's failure to make such determinations does not require remand if meaningful appellate review is possible." *Kallen-Zury*, 710 F. App'x at 369. "Where a district court's order is summary in nature, [this Court] may undertake [its] own plenary inquiry into the issue on appeal if the record is complete and provides an adequate basis for our review." *Id.* (citing *Hall v. Holder*, 117 F.3d 1222, 1226 (11th Cir. 1997)) (internal quotation marks omitted); *see also United States v. Wise*, 881 F.2d 970, 973 (11th Cir. 1989) (holding that the district court's "summary disposition of the parties' factual dispute has not precluded meaningful appellate review").

Such is the case here. Although the district court's order is "summary in nature," *Kallen-Zury,* 710 F. App'x at 369, it does identify each of the claims Hernandez raised

below, sets forth the legal standard for motions pending appeal established by 18 U.S.C. § 3143 and this Court's decision in *Giancola*, and concludes that Hernandez "has not met her burden of demonstrating that the 'decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.'" DE 208 (quoting *Giancola*, 754 F.2d at 901). Moreover, as explained below, the record is sufficiently developed as to each of Hernandez's four claims such that this Court can conduct a meaningful appellate review. No remand is required.

### C. Hernandez has not advanced a substantial question of law or fact.

Should this Court consider Hernandez's motion on the merits, it should deny her motion for release pending appeal because she has not established that her appeal raises a substantial question of law or fact. "[A] 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Giancola*, 754 F.2d at 901. Harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved, which would not result in reversal or a new trial, do not satisfy this standard. *Id.* at 900. Hernandez has not met these stringent requirements.

### 1. Hernandez cannot show that her conviction is likely to be reversed based on the magistrate judge's decision not to strike a juror for cause.

Hernandez's first argument in support of her motion for release pending appeal is that the magistrate judge erred by "refusing to excuse a juror for cause who said that Medicare fraud rubs him the wrong way." Mot. at 4. But even assuming the magistrate

judge erred in her for-cause determination, Hernandez fails to explain how she was injured in any legally cognizable way. That is because Hernandez used a peremptory challenge to strike the juror in question, J.M. And because J.M. did not end up on the jury, under Supreme Court precedent, Hernandez cannot demonstrate any violation of her fair-trial or due-process rights. As the Court has explained "[a]ny claim that the jury was not impartial . . . must focus not on [the removed juror], but on the jurors who ultimately sat." *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). Because "[n]one of those 12 jurors, however, was challenged for cause by [the defendant], and [she] has never suggested that any of the 12 was not impartial," *id.*, Hernandez was not denied her Sixth Amendment right to an impartial jury.

Indeed, the Supreme Court's determination on virtually identical facts in *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), forecloses Hernandez's argument. There, as here, the defendant received and exercised his full complement of peremptory challenges under Federal Rule of Criminal Procedure 24 but complained that "the District Court's for-cause mistake compelled [him] to challenge [a prospective juror] peremptorily, thereby reducing his allotment of peremptory challenges by one." *Id.* at 315. The Court declined to recognize the use of peremptory challenges in such circumstances as a cognizable injury, "hold[ing] that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *Id.* at 317.

Like the defendant in *Martinez-Salazar*, Hernandez, "[a]fter objecting to the District Court's denial of [her] for-cause challenge, . . . had the option of letting [J.M.] sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal." 528 U.S. at 315. Her decision instead to use peremptory challenges on this prospective juror before trial was "in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury." *Id.* at 316. Having cured any injury she might otherwise have suffered from an erroneous determination of juror bias, Hernandez has not stated a cognizable injury to her rights under the Fifth Amendment, the Sixth Amendment, or the Federal Rules of Criminal Procedure.

Accordingly, Hernandez cannot show that this issue raises a substantial question.

2. **Hernandez cannot show that her conviction is likely to be reversed because of the district court's limitation of her closing argument.**

Hernandez next claims, Mot. at 4, that the district court abused its discretion when it limited her closing argument to thirty minutes, particularly when the Government was afforded forty minutes. She is incorrect.

As the Supreme Court has recognized, in criminal cases "[t]he presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and . . . may ensure that argument does not . . . impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975). Indeed, this Court has acknowledged that "[d]efendants and their counsel do not have a right to unlimited

argument time," *United States v. Marcelle*, 689 F. App'x 911, 915 (11th Cir. 2017) (per curiam) (unpublished), and "[t]he period of time to be allotted for attorneys' closing arguments is within the sound discretion of the district court," *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985). In determining whether the time allotted for closing was sufficient, a court of appeals considers "whether the court's restrictions hamper[ed] the jury's ability to understand the information and issues at trial." *United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997); *see also United States v. Gaines*, 690 F.2d 849, 858 (11th Cir. 1982) ("The district court has broad discretion over the scope of closing argument.").

This Court has previously rejected arguments similar to Hernandez's. *See United States v. Ransfer*, 749 F.3d 914, 937 (11th Cir. 2014) (no abuse of discretion in limiting defense attorney's closing argument to twenty minutes); *United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982) (no abuse of discretion when attorney's closing argument was limited to thirty minutes); *United States v. Ubieta*, 630 F. App'x 964, 976 (11th Cir. 2015) (unpublished) (allotting two defendants twenty minutes each for closing argument held not to be abuse of discretion in a case involving "twelve witnesses, eight real estate transactions, and tens of thousands of documents"); *United States v. Diaz*, 279 F. App'x 739, 744 (11th Cir. 2008) (per curiam) (unpublished) (twenty-minute closing limit was not an abuse of discretion); *see also United States v. Okoronkwo*, 46 F.3d 426, 436-437 (5th Cir. 1995) (providing defendant fourteen minutes was sufficient time for closing argument in a complicated conspiracy case).

Here, the court did not unreasonably curtail Hernandez's closing argument. Counsel for Hernandez was on notice of the time restriction before she began her

argument and was given sufficient time to present her factual and legal arguments to the jury. Indeed, Hernandez's counsel made several essential points during closing argument: she discussed reasonable doubt and the Government's burden to prove intent; acknowledged that Hernandez had made some mistakes but argued that she did not commit fraud; emphasized that none of the Government's witnesses had talked to her about committing fraud; argued that Hernandez took direction from the companies she worked for; asserted that before Hernandez signed orders for DME and genetic testing, she reasonably believed that the beneficiaries had been seen by another medical professional; argued that Hernandez may not have always been the one signing the orders; and emphasized that the beneficiaries wanted the braces and genetic tests at issue. In addition, she attacked the credibility of the Government's cooperators. 9/20/23 Trial Tr. at 85-104.[3]

For these reasons, particularly the level of deference afforded to a district court in setting parameters for closing arguments, Hernandez has failed to show that this issue presents a substantial question sufficient to warrant release pending appeal.

---

[3] In addition, the district court allowing the Government to argue for ten more minutes than defense counsel reflected neither unequal treatment of the parties not an abuse of discretion. The Government was entitled to deliver both closing and rebuttal arguments, *see* Fed. R. Crim. P. 29.1, and needed to split its time between those two addresses. Moreover, as the court pointed out, the Government had the burden of proving Hernandez's guilt beyond a reasonable doubt. 9/20/23 Trial Tr. at 130-131.

3. **Hernandez cannot show that her conviction is likely to be reversed based on the admission of her inculpatory statement.**

Hernandez next claims, Mot. at 4, that the district court erroneously admitted a "pretrial inculpatory statement" made by her and "refus[ed] to allow her to introduce the full context in which it was made." The statement Hernandez refers to is a handwritten document that was found during a search of her home that was conducted in November 2021. DE 85 at 2; *see also* DE 79-3. In her motion for release pending appeal before the district court, Hernandez explained that "[t]he statement was prepared in consultation with her then-attorney in preparation for a pretrial discussion with the Government and stated that Ms. Hernandez 'understand[s] that I have been involved in a large scale fraud' and 'now know it was stupid and naïve and that I should have verified' and 'I feel embarrassed and I now know that by not verifying that the documents were filled by real medical professionals and prescribing a brace is a fraud' and 'it was more convenient not to ask questions.'" DE 206 at 14-15. Before trial, Hernandez filed a motion in limine to exclude the document from trial on the grounds that it was protected by the attorney-client privilege. DE 79. An evidentiary hearing was held before a magistrate judge during which Hernandez testified about the creation of the document. *See* 5/16/23 Hearing Tr. Following the hearing, the magistrate judge issued an order denying Hernandez's motion in limine. DE 112. The magistrate judge concluded:

> Here, Defendant cannot establish privilege over the document at issue as the communication in question between Defendant and Attorney Nadler

was not made in confidence. Defendant testified that both her mother and sister were present for the conversation Defendant had with Attorney Nadler regarding the document at issue as Defendant put Attorney Nadler on speakerphone. As such, Defendant cannot establish her communication with Attorney Nadler regarding the document at issue or the document itself are covered by attorney-client privilege.

DE 112 at 4.

Because the magistrate judge correctly ruled that the document is not protected by the attorney-client privilege, Hernandez cannot demonstrate that this issue raises a substantial question sufficient to warrant release pending appeal.

"The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). As the former Fifth Circuit explained, the attorney-client privilege "applies to communications between lawyer and client, and, to come within the scope of the privilege, an attorney must show that the communication *was made to him confidentially*, in his professional capacity, for the purpose of securing legal advice or assistance." *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973) (per curiam) (emphasis added). But when a communication is made to an attorney in the presence of third parties, courts have recognized that the statement was not made "in confidence" and therefore is not protected by the privilege. *See In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally

possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege."); *see also United States v. Stewart*, 287 F. Supp. 2d 461, 464, 466 (S.D.N.Y. 2003) (finding waiver of privilege when defendant sent document to "a nonlawyer family member whose interest in the case can only be described as personal").

That is precisely the case here. Hernandez's own testimony at the evidentiary hearing establishes that her mother and sister were present for her discussion with her attorney during which the statement was dictated. *See* 5/16/23 Hearing Tr. It is therefore not protected by the attorney-client privilege and was properly admitted at trial. Hernandez has failed to establish a substantial question as to this issue.[4]

> **4.  Any error in the calculation of Hernandez's advisory Guidelines range was harmless, and thus, will not result in a reduced sentence.**

Finally, Hernandez argues, Mot. at 4, that the district court erred by using intended loss, rather than actual loss, to calculate her advisory Guidelines sentence. She notes that the question of whether the Guidelines commentary requires the use of intended loss is "the subject of an active split among Southern District of Florida judges

---

[4] Furthermore, the evidence in this case, which consisted of testimony from cooperators, Medicare beneficiaries, and experts, as well as doctors' orders, text messages, emails, Medicare claims data, DocuSign analyses, banking documents, and phone records, was overwhelming such that any error in the admission of the document would be harmless. As this Court has recognized, the identification of an error which proves to be harmless does not entitle a defendant to release pending appeal. *See Giancola*, 754 F.2d at 901.

and would have changed the guidelines." *Id.* This Court need not consider whether this issue poses a substantial question because, even if it does, any error is not "likely to result in . . . a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1).

In reviewing the reasonableness of a sentence, this Court looks first to whether the district court committed any "significant procedural error," such as "miscalculating the advisory guidelines range." *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). However, a Sentencing Guidelines calculation error is harmless "when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable," under what this Court has called a "*Keene* analysis." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020); *see United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). This framework avoids "pointless reversals and unnecessary do-overs of sentence proceedings." *Keene*, 470 F.3d at 1349 (internal quotation marks omitted).

Here, the district court indicated that it would have imposed the same sentence regardless of whether or not it used intended loss or actual loss to calculate Hernandez's advisory Guidelines range. In denying Hernandez's objection to the loss amount, the district court stated:

> THE COURT: So, I will note the objection and deny it. And, I certainly will also note that you have preserved that objection in the event I

anticipate you taking that issue up on appeal. And, if it turns out to be incorrect, then we can always correct the guideline calculation.

Having said that, I think it is prudent to note that an alternative sentence, post -- would be to impose what would be a reasonable sentence, and that -- in that case, the sentence that I impose today would be both with the application of the guideline provision as actual or intended, but also a reasonable sentence, which would be the same. Okay?

So, they have the benefit that -- the Circuit has the benefit of knowing what the Court's sentence would be, viewed even in the event that the guideline calculation was incorrect.

12/21/23 Sent. Tr. at 6.

Thus, the district court made clear that the sentence it would impose "would be the same" "both with the application of the guideline provision as actual or intended." *Id.* Because the court was "aware of the dispute about the guideline application," it had the "chance to determine in the first instance that the sentence [was] proper regardless of any error." *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022).

Accordingly, because the district court would have imposed the same sentence regardless of whether it had used Hernandez's preferred metric of actual loss, she cannot show that this issue is likely to result in a substantially reduced sentence, the standard required to warrant release pending appeal.[5]

---

[5] Furthermore, in her motion to the district court, Hernandez acknowledged that there is only an $81 million difference between the actual loss amount of $111 million and intended loss amount of $192 million. DE 206 at 12-14; *see also* PSR ¶¶ 69-70. Because that difference would only result in a two-level decrease of the offense level, *see* U.S.S.G. § 2B1.1(b)(1)(M) (24-level increase for losses between $65 million and $150 million), use of the $111 million actual loss number that Hernandez urges would only lower her advisory Guidelines range from 210-262 months to 168-210 months. Any

## CONCLUSION

For the foregoing reasons, this Court should deny Hernandez's motion for release pending appeal.

Respectfully submitted,

MARKENZY LAPOINTE
United States Attorney
Southern District of Florida

NICOLE M. ARGENTIERI
Principal Deputy Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

KATHERINE PAYERLE
Assistant Chief
ANDREA SAVDIE
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

JEREMY R. SANDERS
Appellate Counsel
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
(202) 304-7843
jeremy.sanders@usdoj.gov

---

corresponding decrease in Hernandez's custodial sentence would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(iv).

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this brief contains 4,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared on a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

/s/ *Jeremy R. Sanders*
JEREMY R. SANDERS
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C. 20530
(202) 304-7843
jeremy.sanders@usdoj.gov