**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10047

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ELIZABETH HERNANDEZ,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20152-KMM-1

————————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about procedural fairness at trial. The government charged nurse practitioner Elizabeth Hernandez with defrauding Medicare to the tune of $111 million. Specifically, the government alleged that Hernandez prescribed unnecessary medical

equipment and genetic testing, and that she billed for fraudulent and nonexistent telemedicine appointments. After a six-day trial, a jury convicted Hernandez of Medicare fraud.

Hernandez argues that her trial was unfair in several respects. Most significantly, she challenges the district court's decision to grant the government ten more minutes for closing argument than it allotted to her. Although district courts have broad discretion to set the total amount of time for closing arguments—and although this discretion extends to allocating that time between the parties—the district court did not justifiably exercise that discretion here. Instead, the district court applied an unusual presumption: it said that the party with the burden of proof (here, the government) should have more time for closing argument. We agree with Hernandez that the district court abused its discretion by applying this unusual presumption of unequal treatment. Nonetheless, we cannot say that this error was prejudicial. The difference in argument time was small, and the evidence of Hernandez's fraud was overwhelming. Accordingly, we are convinced that the court's error was harmless.

Hernandez's other arguments are similarly unavailing. She argues that the district court (1) committed plain error when it misread a jury instruction, (2) should have struck a juror for cause even though the juror never served, (3) was too involved in advising the parties how to introduce Hernandez's inculpatory statement, and (4) erred in applying the Sentencing Guidelines. These arguments

are inconsistent with our precedents or otherwise fail to sufficiently challenge her conviction. Accordingly, we affirm the district court.

## I.

### A.

The evidence at trial establishes that Hernandez began defrauding Medicare in 2018. Her fraud began when medical recruiter Barton Associates offered to pay her in exchange for signing prescriptions from telemarketers. The first prescriptions that she signed were for orthotic braces, also referred to as durable medical equipment, for body parts like the back, knee, or shoulder.

At first, the fraud worked like this: the telemarketers cold-called Medicare beneficiaries and offered to send them free or low-cost medical equipment. If the beneficiary agreed, the call center prefilled the prescription forms and sent them to Hernandez for signature. The call centers then sold the prescriptions to medical equipment providers for hundreds of dollars per beneficiary. The medical equipment providers then billed Medicare. And Barton Associates would pay Hernandez a kickback for the prescriptions she signed.

Hernandez signed many of these prescriptions within seconds, and she signed thousands each month. She often prescribed multiple braces for each beneficiary. And she did so without ever performing a physical exam on the patients to determine the medical necessity of the prescription. Indeed, many of the patient charts

contained information that appeared to be cut and pasted from other patients or was internally inconsistent.

Eventually, the fraud became too big for Hernandez to handle on her own. So she recruited a close friend and nurse, Joanna Ledesma—along with family members—to help her sign prescriptions. Ledesma was not qualified to sign prescriptions, and Hernandez told her not to call beneficiaries but instead to fabricate call logs and make up symptoms.

Then Hernandez grew nervous. In Operation Brace Yourself, the government cracked down on a very similar medical equipment marketing scheme. That month, Hernandez's equipment orders declined, and she took steps to cover her tracks by reporting her National Provider Identifier as stolen to the police, Medicare, and the Office of the Inspector General.

But instead of winding down her fraudulent activities, Hernandez pivoted to prescribing medically unnecessary genetic screenings. This scheme worked in essentially the same way that the medical equipment scheme worked. Telemarketers contacted Medicare beneficiaries and sold them unnecessary testing. The telemarketers sent Hernandez the prefilled prescription forms for signature, and they then sold the prescriptions to labs that billed Medicare. When Hernandez signed these documents, she attested to her personal relationship with the beneficiaries, even though no such personal relationship existed. And after Hernandez filled the prescriptions, the telemarketers paid her. Between 2018 and 2021,

Hernandez prescribed more genetic tests than any other provider in the United States.

Again, Hernandez began to grow nervous. In Operation Double Helix, the government charged multiple defendants in a similar genetic testing scheme. Upon learning of this, Hernandez sent a DOJ press release about the charges to a nurse whom she had recruited. And at around this time, Hernandez's genetic test orders declined.

But still the fraud was not over. As the COVID-19 pandemic swirled, Hernandez found a new way to defraud Medicare: billing for thousands of telemedicine visits that never occurred. She billed for so many telemedicine appointments that, on many days, she claimed more than twenty-four hours' worth of visits.

All in all, Hernandez received over $1.66 million in kickbacks and direct Medicare payments from all her varying forms of fraud.

Predictably, Medicare documented hundreds of complaints against Hernandez, sent her record requests that went unfulfilled, and eventually suspended payments to her. She told associates that she was scared, and that the FBI had accused her of lying. And she began deleting texts to cover up her tracks.

Then, in November 2021, during an unrelated health care fraud investigation, the FBI, working with the Department of Health and Human Services, the Office of the Inspector General, and the local police, obtained and executed a search warrant on Hernandez's residence. During this search, law enforcement found

a written statement in which Hernandez admitted to participating in fraud.

### B.

A grand jury indicted Hernandez in April 2022. She was indicted for one count of conspiracy to commit health care fraud and wire fraud under 18 U.S.C. § 1349, six counts of health care fraud under 18 U.S.C. § 1347, and three counts of false statements relating to health care matters under 18 U.S.C. § 1035.

In the months leading up to Hernandez's trial, a magistrate judge conducted a pretrial motion in limine hearing. As relevant here, the hearing focused on whether the attorney-client privilege barred admission of Hernandez's written statement, found during the search of her home, confirming her involvement in the fraud. During the hearing, Hernandez testified that her attorney dictated the statement over the phone. She also testified that the contents of the statement were false. But the district court denied Hernandez's motion to exclude the statement. The court did so because Hernandez's family had been present for the call with her attorney, thereby defeating the attorney-client privilege.

Later, during voir dire, Hernandez's lawyer tried to strike a juror for cause after he made several statements indicating that he was biased against someone accused of Medicare fraud. But the court rejected Hernandez's for-cause challenge, determining that the juror could remain unbiased. Hernandez thus used a peremptory strike on the challenged juror, exhausting her challenges. She

then requested an additional peremptory strike to use on yet another juror, which the court denied. The latter juror thus sat on the jury.

The prosecution proceeded to trial. During trial, the government wanted to introduce Hernandez's testimony, given during the motion in limine hearing, that she wrote the statement admitting to her fraudulent activities. In response, Hernandez attempted to have the whole hearing transcript admitted, citing the rule of completeness. The government objected, arguing that the transcript introduced hearsay problems. The court sustained the government's objection and concluded that Hernandez could explain the statement on the stand.

The government then asked if, instead, it could introduce only Hernandez's admission to writing the statement and stipulate that Hernandez testified that she wrote the statement at the direction of her attorney. Hernandez agreed. She also requested that the government specify that she now had new attorneys.

But then the government changed course again and agreed to introduce the entire hearing transcript. The court pushed back on this, stressing that Hernandez was "willing to meet [the government] halfway." Doc. 148 at 14. The government retracted its agreement to introduce the transcript and said that it would introduce Hernandez's testimony that she wrote the statement at the direction of a prior attorney. Hernandez agreed. The government then introduced Hernandez's written statement and read Hernandez's relevant hearing testimony.

Later, near the end of the six-day trial, the court discussed closing arguments. The government asked for an hour, and Hernandez's counsel asked for "an hour for each day" of trial. Doc. 149 at 55–56. Instead, the court allotted the government forty minutes and Hernandez thirty minutes. No one objected.

The government proceeded to give its initial closing. Then, after the government had concluded, Hernandez's counsel argued for thirty minutes before the court cut her off. Hernandez asked for ten more minutes, arguing to the court that the government had gone over its time. The court refused, and the government proceeded to give its rebuttal.

Hernandez then objected, stating that she did not know about the time difference until recently and that more time would have reflected the complexity of the trial. She argued that she was unable, given only thirty minutes, to discuss the false statement charges, the amount that she received from fraud, and various other issues, including good faith. The court, in response, observed that she had not objected when he set the time for closing. And the court also explained that the government should receive more time for closing because "it was the [g]overnment's burden to prove." *Id.* at 130.

After closing, the court proceeded to read the jury instructions. Simultaneously, the instructions were displayed on a screen. As the judge read the instructions out loud, he misstated the good faith instruction, saying that "[a] defendant is required to prove

good faith." *Id.* at 122. The written jury instructions, however, correctly said that "[a] defendant isn't required to prove good faith." Doc. 135 at 21. There was no objection to the incorrect oral jury instruction.

After deliberation, the jury returned a guilty verdict on multiple counts. The court then sentenced Hernandez to twenty years in prison. The court based this sentence on the presentence investigation report's calculation that Hernandez intended a loss of $192 million, even though she actually billed Medicare $111 million. Hernandez objected, arguing that actual loss was the appropriate measure of harm. The court overruled the objection. The court then entered judgment, and Hernandez appealed.

## II.

We review the amount of time allocated for closing argument for abuse of discretion. *United States v. Ransfer*, 749 F.3d 914, 921 (11th Cir. 2014). We also review the court's refusal to strike a prospective juror for cause for abuse of discretion. *Ward v. United States*, 694 F.2d 654, 665 (11th Cir. 1983).

Hernandez also raises a series of challenges based on alleged errors that she failed to object to below. An unpreserved objection of this nature is reviewed for plain error. *United States v. Hill*, 99 F.4th 1289, 1312 (11th Cir. 2024). "We find plain error when (1) an error has occurred, (2) the error was plain, and (3) it affected the defendant's substantial rights, and if those prongs are met, we then have discretion to correct the error if it (4) seriously affected the fairness of the judicial proceedings." *United States v. Malone*, 51

F.4th 1311, 1319 (11th Cir. 2022). To satisfy the third prong, the defendant must show that the error "affected the outcome of the district court proceedings." *Id.* (citation omitted).

## III.

Hernandez says the district court erred in five ways. Her lead argument is that the district court should not have allotted more argument time to the government than it did to her. Her other arguments—an error in reading the jury instructions, a juror strike, the district court's suggestion about how to introduce her statement, and her sentence—did not affect the result at trial, are foreclosed by our precedents, or both. We will start with the issue of argument time and then address the remaining issues.

### *A.*

We start with Hernandez's challenge to the way that the court allotted time for closing arguments. She argues primarily that the district court abused its discretion in granting the government more time for closing arguments than it granted her. We agree. Nevertheless, we determine that this error was harmless.

Let's begin with some basics. District courts have discretion to decide how much time to set aside for closing argument and how to allocate that argument time among the parties. *United States v. Harris*, 916 F.3d 948, 954 (11th Cir. 2019); *Hodge v. United States*, 271 F.2d 52, 52 (5th Cir. 1959). That said, district courts must ensure that they treat the parties fairly. *See Bonilla v. Yamaha*, 955 F.2d 150, 155 (1st Cir. 1992); *Alston v. West*, 340 F.2d 856, 858 (7th Cir. 1965).

24-10047                Opinion of the Court                11

A district court also has discretion to divide argument time unequally when it has a good reason. This discretion is especially broad in complex or multi-party proceedings. *See, e.g., United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982) (allocating two hours to the government and three-and-a-half hours to be divided between seven co-defendants); *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985) (allocating each side three hours, with four co-defendants to split time however they wished). For instance, in *Jeter v. St. Regis Paper Co.*, the old Fifth Circuit affirmed a district court that granted twice as much time to the defendants as to the plaintiffs. 507 F.2d 973, 980 (5th Cir. 1975). Although the *Jeter* court noted that "it might have been preferable for plaintiff to have an equal amount of time," *id.*, it said that the district court reasonably decided to permit a third-party defendant to present a separate closing argument and that decision justified allocating more overall argument time to the defendants as a group. *Id.* Under those facts, the *Jeter* court said the district court did not abuse its considerable discretion in allocating argument time.

The district court had no such justification here. The only justification that the court offered—that the government has the burden of proof—is true in all criminal prosecutions. Indeed, it is a feature of our constitutional system. *See In re Winship*, 397 U.S. 358, 364 (1970) (affirming that the Constitution places the burden of proof on the government). It might be that, in some unusual case, the government needs more argument time than the defendant because of a particular feature of that case. But a basic fact of criminal

procedure—that the government has the burden of proof—cannot justify dividing argument time unequally as between the parties.

We cannot see any other feature of this case that would justify unequal time. Unlike in *Jeter*, this is not a case with multiple defendants. 507 F.2d at 980. Nor is it a case in which one party needs more time for some idiosyncratic and justifiable reason, such as replaying video evidence. Nor, indeed, is it a case in which the court granted one party more time simply because that party requested it. The very opposite happened here, as Hernandez requested more time than the government. Because the court had no justification for denying Hernandez's request for more time, the court abused its discretion.

Our analysis does not stop there, however. A nonconstitutional error "is harmless unless it resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020) (citation modified). We conclude that this error was harmless for two reasons.

First, there is no reason to think that the disparity in treatment hurt Hernandez here. Nothing happened in the government's extra ten minutes that arguably affected the outcome of the trial. And we cannot say that Hernandez needed more than the thirty minutes that she was allotted. After all, we have previously affirmed district courts for setting time limits like the one Hernandez challenges here. *See Hirst*, 668 F.2d at 1185 (thirty minutes per defendant); *Ransfer*, 749 F.3d at 937 (twenty minutes). In her thirty

minutes, Hernandez argued that she lacked specific intent and that her alleged false statements were either mistaken or made by a third party without Hernandez's consent. She was thus able to address her main defense to the fraud and false statement charges, and she was able to address all her strongest arguments, at least at a high level. As a result, we cannot say that she needed an extra ten minutes to appropriately make her argument to the jury.

Second, the government's evidence against Hernandez was overwhelming. For instance, Hernandez directed her associate Ledesma to fabricate call logs and falsify facts about beneficiaries. She signed documents attesting to her patient relationship with beneficiaries, despite having no such relationship. In many cases, she billed Medicare for over twenty-four hours' worth of telemedicine appointments per day. And, in a statement that the government entered at trial, she admitted to participating in a fraudulent scheme. It is inconceivable that granting Hernandez ten extra minutes could have overridden the extensive trial evidence of her guilt.

In sum, Hernandez did not need more time to present her argument, and the government presented overwhelming evidence of her guilt. So, although the district court abused its discretion in denying Hernandez's request for equal time, that error was harmless.

*B.*

In addition to challenging the court's allocation of time for closing arguments, Hernandez appeals her conviction on four

other grounds. First, she argues that the court committed plain error when it orally misrepresented the good faith jury instruction. Second, she argues that the district court abused its discretion when it denied Hernandez's for-cause challenge to a juror. Third, she argues that the district court committed plain error when it suggested how the government should introduce Hernandez's inculpatory statement and the related transcript. And fourth, she argues that the district court erred in applying the Sentencing Guidelines to her sentence. Each argument fails, and we discuss them in turn below.

First, the district court did not commit plain error when it orally misstated the good faith jury instructions. This is so because the error did not affect Hernandez's substantial rights. We would conclude otherwise only if Hernandez established a reasonable probability that the error altered the outcome of her trial. *Malone*, 51 F.4th at 1319. But she cannot make that showing here, as the error was not repeated in either the instructions on the display screen or the written instructions. And the jury had the correct written instructions with them during deliberation. It is implausible to suggest that the court's single, brief oral misstatement trumped the display-screen instructions and the written instructions that were available to the jury. *United States v. Hansen*, 262 F.3d 1217, 1249-50 (11th Cir. 2001). We also cannot say this verbal misstatement affected the result because of the overwhelming evidence recounted above.

This determination is consistent with our precedent. We have previously held that a "single slip of the tongue" that a district court later corrects is not plain error. *United States v. Mills*, 704 F.2d 1553, 1558 (11th Cir. 1983). And we have previously affirmed convictions when courts have misstated a jury instruction, provided that they have corrected the error elsewhere. *See Hill*, 99 F.4th at 1312 (upholding a conviction even though the court omitted the word "not" before "guilty" when discussing the burden of proof because the court had given other, entirely correct instructions on the burden); *United States v. Gold*, 743 F.2d 800, 821–22 (11th Cir. 1984); *United States v. Carrodeguas*, 747 F.2d 1390, 1393 (11th Cir. 1984). As a result, the district court's oral misstatement survives plain error review.

Second, assuming without deciding that the court's denial of Hernandez's challenge to a potential juror was in error, that error was nonetheless harmless. She was able to use a peremptory challenge to exclude the objected-to juror. And she cannot demonstrate that the jury that sat was actually biased, nor does she even attempt to. *See Spivey v. Head*, 207 F.3d 1263, 1273 (11th Cir. 2000) ("Claims that the jury was not impartial must focus on the jurors who actually sat."). As a result, she cannot show that the error in any way harmed her. *Id.*

In addition, her loss of a peremptory challenge is not any kind of injury. *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury," and "[w]e

have long recognized that peremptory challenges are not of constitutional dimension."); *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) (holding that, if a defendant uses a peremptory challenge to strike a biased juror but the jury that is ultimately seated is impartial, "he has not been deprived of any . . . right").

Third, the district court did not commit plain error when it made a simple suggestion about how to present Hernandez's inculpatory statement. Hernandez objects to the court's interjection that Hernandez was "willing to meet [the government] halfway," thereby dissuading the government from introducing the entire transcript from the motion in limine hearing. But the court here acted properly. After all, it is the court's role to ensure a streamlined and efficient presentation of evidence. *See* Fed. R. Evid. 611. So long as the court does not abandon its judicial neutrality, which it did not here, it does not err by fulfilling its role under the Federal Rules of Evidence.

Fourth, the district court did not err in relying on the intended loss to Medicare when sentencing Hernandez. Hernandez argues that the court should have calculated her sentence based on the $111 million that she billed to Medicare, instead of $192 million of intended loss. But she agrees that *United States v. Horn* forecloses this argument. 129 F.4th 1275 (11th Cir. 2025). In *Horn*, we held that when calculating special offense characteristics for fraud, courts should use the greater of actual or intended loss. *Id.* at 1300.

24-10047                Opinion of the Court                17

We appreciate her counsel's candor in recognizing that this argument is foreclosed, and we note that Hernandez has preserved the argument for en banc review or review by the Supreme Court.

**IV.**

For the foregoing reasons, we **AFFIRM** Hernandez's conviction.

24-10047        LUCK, J., Concurring in the Judgment        1

LUCK, Circuit Judge, concurring in the judgment:

I write separately to address Elizabeth Hernandez's argument that the district court reversibly erred in awarding her thirty minutes of closing-argument time instead of the forty minutes it gave to the government. I agree with the majority opinion that there was no reversible error.

The defendant's closing-argument right flows from the Sixth Amendment's guarantee of the assistance of counsel in all criminal prosecutions. *See Herring v. New York*, 422 U.S. 853, 856–65 (1975). The right, we and the Supreme Court have explained, has two requirements. First, a district court may not "deny absolutely the opportunity for any closing summation at all," because "a total denial of the opportunity for final argument . . . is a denial of the basic right of the accused to make his defense." *Id.* at 859, 863. The defendant must therefore have some opportunity to give a closing argument to the fact finder, "no matter how strong the case for the prosecution may appear to the presiding judge." *Id.* at 858. Second, the opportunity to address the fact finder must be long enough for the defendant "to make all legally tenable arguments that are supported by the facts of the case." *United States v. Simmons*, 122 F.4th 1256, 1262 (11th Cir. 2024) (quoting *United States v. Harris*, 916 F.3d 948, 954 (11th Cir. 2019)); *see also United States v. Gaines*, 690 F.2d 849, 858 (11th Cir. 1982) (same). That's it.

"In *all* . . . respects," outside of these two requirements, the district court has "broad discretion" in constraining the defendant's argument, including "in controlling the duration and limiting the

scope of closing summations." *Herring*, 422 U.S. at 862 (emphasis added). As part of the district court's broad discretion, it "may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive and redundant." *Id.* So long as the defendant has an opportunity to give a closing argument and he has enough time to make all colorable legal arguments supported by the evidence, "the period of time for an attorney's closing argument is within the discretion of the district judge." *See United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982); *see also United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985) ("The period of time to be allotted for attorneys' closing arguments is within the sound discretion of the district court."); *United States v. Alonso*, 740 F.2d 862, 873 (11th Cir. 1984) ("The appellants contend that the district court unreasonably limited the extent of their closing argument. This is a matter within the sound discretion of the district court."); *United States v. Bernes*, 602 F.2d 716, 722 (5th Cir. 1979) ("The period of time set aside for the attorneys' closing argument is within the discretion of the district judge.").

Consistent with the broad discretion to control the duration and scope of closing summations, we have found no abuse where a district court has given a defendant less argument time than the government. *See Hirst*, 668 F.2d at 1185 (no abuse of discretion where the district court gave defendant Crutchfield thirty minutes of closing-argument time and the government two hours); *Carter*, 760 F.2d at 1581–82 (no abuse of discretion where defendant Carter was left with fifteen minutes for closing argument, which was less than the three hours allotted to government); *United States v. King*,

24-10047        LUCK, J., Concurring in the Judgment                3

532 F.2d 505, 510 (5th Cir. 1976) (no abuse of discretion where the district court gave defendant Tellis Jones thirty minutes for closing argument and the government forty-five minutes).  And neither have our sister circuits.  *See, e.g.*, *United States v. Okoronkwo*, 46 F.3d 426, 436–37 (5th Cir. 1995) (no abuse of discretion where defendant Eke had fourteen minutes of closing-argument time compared to the government's forty minutes); *United States v. Roviaro*, 379 F.2d 911, 914–15 (7th Cir. 1967) (no abuse of discretion where defendant Roviaro had thirty minutes of closing argument time compared to sixty minutes for the government); *United States v. Alaniz*, 148 F.3d 929, 935 (8th Cir. 1998) (no abuse of discretion where defendant Alberto had sixteen minutes for closing argument and the government had thirty-six).

Here, as the majority opinion explains, both closing-argument requirements were met in this case.  Hernandez had the opportunity to give a closing summation to the jury, and she had enough time for the legally colorable arguments she wanted to make.  Beyond these two requirements, the district court was within its discretion to limit the duration of Hernandez's closing remarks.  For that reason, I too would affirm.